# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NEW HAMPSHIRE INDONESIAN COMMUNITY SUPPORT; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; and MAKE THE ROAD NEW YORK, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States, in his official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; SECRETARY OF HOMELAND SECURITY, in their official capacity; U.S. DEPARTMENT OF STATE; SECRETARY OF STATE, in their official capacity; U.S. DEPARTMENT OF AGRICULTURE; SECRETARY OF AGRICULTURE, in their official capacity; CENTERS FOR MEDICARE AND MEDICAID SERVICES; ADMINISTRATOR OF THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, in their official capacity, <br><br> *Defendants*. | Case No. 1:25-cv-38 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Birthright citizenship embodies America's most fundamental promise: that all children born on our soil begin life as full and equal members of our national community, regardless of their parents' origins, status, or circumstances. This principle has enabled generations of children to pursue their dreams and build a stronger America.

2. The framers of the Fourteenth Amendment specifically enshrined this principle in our Constitution's text to ensure that no one—not even the President—could deny children born

1

in America their rightful place as citizens. They did so with full knowledge and intent that this would protect the children of immigrants, including those facing discrimination and exclusion.

3. The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1.

4. In *United States v. Wong Kim Ark*, the Supreme Court confirmed that children born in the United States of noncitizen parents are citizens under the Fourteenth Amendment's Citizenship Clause. 169 U.S. 649 (1898). Following *Wong Kim Ark*, Congress codified birthright citizenship in a statute whose language mirrors the Fourteenth Amendment. *See* 8 U.S.C. § 1401(a).

5. In the over 125 years since the Supreme Court emphatically rejected the last effort to undercut birthright citizenship in *Wong Kim Ark*, this principle has remained undisturbed constitutional bedrock. Even through countless subsequent immigration debates, and periods of intense anti-immigrant sentiment, this core constitutional guarantee has protected generations of Americans and prevented the emergence of a hereditary underclass excluded from full participation in American life.

6. For families across America today, birthright citizenship represents the promise that their children can achieve their full potential as Americans. It means children born here can dream of becoming doctors, lawyers, teachers, entrepreneurs, or even president—dreams that would be foreclosed if their citizenship were stripped away based on their parents' status.

7. Now, flouting the Constitution's dictates, statutory commands, and longstanding Supreme Court precedent, Defendant President Donald Trump has issued an Executive Order entitled "Protecting the Meaning and Value of American Citizenship" ("the Order"), which

attempts to upend one of the most fundamental American constitutional values by denying citizenship to children born on American soil to a mother who is "unlawfully present" or temporarily present, and a father who is not a U.S. citizen or lawful permanent resident.

8. For Plaintiffs—organizations with members impacted by the Order—and for families across the country, this Order seeks to strip from their children the "priceless treasure" of citizenship, *Fedorenko v. United States*, 449 U.S. 490, 507 (1981), threatening them with a lifetime of exclusion from society and fear of deportation from the only country they have ever known. But that is illegal. The Constitution and Congress—not President Trump—dictate who is entitled to full membership in American society.

9. The Order straightforwardly violates the Citizenship Clause, as well as the birthright citizenship statute, and should be enjoined.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11. Venue is proper in the District of New Hampshire because Plaintiff New Hampshire Indonesian Community Support ("NHICS") resides in the District. 28 U.S.C. § 1391(e)(1).

**PARTIES**

12. Plaintiff New Hampshire Indonesian Community Support is a nonprofit, membership-based community organization in New Hampshire. It is headquartered in Dover, New Hampshire.

13. NHICS's mission is to help foster a well-informed, well-connected, and stronger immigrant community in New Hampshire and to build a community that contributes to society.

14. NHICS has approximately 2,000 members located across New Hampshire.

15. NHICS has members whose children will be denied citizenship under the Order.

16. Plaintiff League of United Latin American Citizens ("LULAC") is a nationwide, non-profit, non-partisan, membership-based organization founded in 1929.

17. LULAC's mission is to improve the lives of Latino families throughout the United States and to protect their civil rights in all aspects.

18. LULAC has over 325,000 members nationwide.

19. LULAC has members whose children will be denied citizenship under the Order.

20. Plaintiff Make the Road New York ("MRNY") is a nonprofit, membership-based community organization with five offices in the New York area.

21. MRNY's mission is to build the power of immigrant and working class communities to achieve dignity and justice.

22. MRNY has over 28,000 members residing in New York State.

23. MRNY has members whose children will be denied citizenship under the Order.

24. Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity. In that capacity, he issued and will oversee the implementation of the Order challenged in this lawsuit.

25. Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the United States federal government. Its components include U.S. Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP"). ICE's responsibilities include enforcing federal immigration law within the interior of the United States, including by carrying out deportations. CBP's responsibilities include inspecting and

admitting people at international points of entry, including airports and land borders, and engaging in immigration enforcement near the border.

26. Defendant Secretary of Homeland Security has responsibility for overseeing enforcement and implementation of the Order by all DHS staff. They are sued in their official capacity.

27. Defendant U.S. Department of State ("DOS") is a cabinet-level department of the United States federal government. DOS is responsible for the issuance of passports to United States citizens.

28. Defendant Secretary of State has responsibility for overseeing enforcement and implementation of the Order by all DOS staff. They are sued in their official capacity.

29. Defendant U.S. Department of Agriculture ("USDA") is a cabinet-level department of the United States. USDA administers the Supplemental Nutrition Assistance Program ("SNAP").

30. Defendant Secretary of Agriculture has responsibility for overseeing enforcement and implementation of the Order by all USDA staff. They are sued in their official capacity.

31. Defendant Centers for Medicare and Medicaid Services ("CMS") is an agency of the United States. CMS provides health coverage to people in the United States through Medicaid.

32. Defendant Administrator of the Centers for Medicare and Medicaid Services has responsibility for overseeing enforcement and implementation of the Order by all CMS staff. They are sued in their official capacity.

## STATEMENT OF FACTS

### A. Legal Background

33. "Jus soli" is "the ancient and fundamental" principle of "citizenship by birth within the territory" of the United States. *Wong Kim Ark*, 169 U.S. at 693. This principle has its roots in English common law, *see Calvin v. Smith*, 77 Eng. Rep. 377 (K.B. 1608), and applied in the colonial era and early years of the American republic, *see Wong Kim Ark*, 169 U.S. at 658; *Inglis v. Trustees of Sailor's Snug Harbor*, 28 U.S. 99, 164 (1830).

34. However, in the infamous case of *Dred Scott v. Sandford*, the Supreme Court held that, despite their birth in the United States, the descendants of enslaved people were "not included, and were not intended to be included, under the word 'citizens' in the Constitution." 60 U.S. 393, 404-05 (1857).

35. After the Civil War, Congress repudiated *Dred Scott* and constitutionalized the birthright citizenship rule in the Fourteenth Amendment's Citizenship Clause, which provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1. *See Wong Kim Ark*, 169 U.S. at 692-93. In so doing, the Framers strove to transform American citizenship from a race-based, two-tiered system, to one that was equally open to all regardless of their parents' heritage.

36. The Citizenship Clause was enacted with full knowledge among both proponents and opponents that it would guarantee the citizenship of children of noncitizens.

37. Accordingly, when the question of the citizenship of the child of two Chinese nationals—who at that time were barred under the Chinese Exclusion Acts from becoming U.S. citizens themselves—came before the Supreme Court in *Wong Kim Ark*, it rightly concluded that because the plaintiff had been born in the United States, he was a citizen, regardless of his

parents' circumstances. 169 U.S. at 693. In *Wong Kim Ark*, the Supreme Court conclusively determined that all children born in the United States are citizens, subject only to very limited exceptions.

38. The only exception relevant today is the children of foreign diplomats, who, under *Wong Kim Ark*, are not "subject to the jurisdiction" of the United States. *Id*. at 683.

39. Another exception *Wong Kim Ark* noted were children born to foreign armies living in U.S. territory that those armies had conquered. *Id*. at 682-83. There is no such U.S. territory today.

40. Finally, *Wong Kim Ark* noted an exception for children born to Native Americans living within tribal territory. *Id*. at 681. Because tribes were considered quasi-sovereign entities, children born to Native Americans in their territory were deemed similar to "the children of subjects of any foreign government born within the domain of that government." *Id*. (quoting *Elk v. Wilkins*, 112 U.S. 101, 102 (1884)). Congress later declared all Native Americans born in the United States to be U.S. citizens. Indian Citizenship Act, Pub. L. No. 68-175, 43 Stat. 253 (1924).

41. Beyond these exceptions, the Fourteenth Amendment's guarantee of birthright citizenship applies to "the children born within the territory of the United States of all other persons." *Wong Kim Ark*, 169 U.S. at 693.

42. In 1940, Congress enacted a statute that mirrors the Citizenship Clause. The birthright citizenship statute provides that "a person born in the United States, and subject to the jurisdiction thereof" is a citizen of the United States. 8 U.S.C. § 1401(a); *see also id.* §§ 1402, 1406(b), 1407(b). This language "[wa]s taken . . . from the fourteenth amendment to the Constitution." *To Revise and Codify the Nationality Laws of United States into a Comprehensive*

*Nationality Code: Hearings Before the Comm. on Immig. and Naturalization on H.R. 6127 Superseded by H.R. 9980*, 76th Cong., 1st Sess., at 38 (1940).  In 1952, the birthright citizenship statute was reenacted as part of a broader set of reforms to the naturalization laws.

43. In passing and reenacting this statute, Congress codified the long-settled interpretation of the Fourteenth Amendment, whereby all children born in the United States were citizens, subject only to the narrow exceptions identified in *Wong Kim Ark*.

**B. The Executive Order**

44. On January 20, 2025, President Trump issued the Order.

45. The Order purports to declare that a child born in the United States is not a citizen if, at the time of birth, their mother is either "unlawfully present in the United States" or their "mother's presence in the United States was lawful but temporary," and their father was not a U.S. citizen or lawful permanent resident.

46. The Order directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security to implement its terms.  It also directs all other agency heads to issue guidance regarding implementation of the Order.  Such agencies include USDA and CMS.

47. The Order specifies that it will apply to persons born after 30 days from its issuance.

48. Neither the Constitution nor any federal statute confers any authority on the President to redefine American citizenship.

49. By attempting to limit the right to birthright citizenship, the Order exceeds the President's authority and runs afoul of the Constitution and federal statute.

**C. Plaintiffs and Their Members**

50. Plaintiffs NHICS, MRNY, and LULAC are membership-based organizations. Each organization has members who are living in the United States and currently expecting children who, once they are born, will be denied citizenship under the Executive Order.

51. NHICS's members include noncitizens who have a variety of immigration statuses. Specifically, NHICS's members include citizens, lawful permanent residents, asylees, applicants for immigration relief including asylum, student visa holders, recipients of Deferred Action for Childhood Arrivals ("DACA"), and undocumented noncitizens. Some of these members are currently expecting children who may be deemed to be covered by the Order.

52. For example, "Gail" and "Thomas" are NHICS members whose child, when born, would be denied U.S. citizenship under the Order.

53. Gail came to the United States on a tourist visa in 2023 and has a pending application for asylum but no other current immigration status. She is pregnant and has a due date in late February.

54. Thomas is Gail's husband. He came to the United States in 2023 on a tourist visa and has a pending application for asylum but no other current immigration status. He is the father of Gail's expected child.

55. Many of MRNY's members are neither U.S. citizens nor lawful permanent residents. Some of these members are currently expecting children who may be deemed to be covered by the order.

56. For example, "Faith" is a member of MRNY and a noncitizen. Faith is pregnant, and is due in March 2025. She has lived in the United States for over twenty years. She is a DACA recipient but has no other immigration status, and her partner, who is the father of her expected child, is not a Lawful Permanent Resident nor a U.S. citizen.

9

57. "Gordon" is a member of MRNY and a noncitizen. He and his partner are expecting a child due in March 2025. He and his partner have both applied for asylum, but neither has any other immigration status.

58. "Johnathan" is a member of MRNY and a noncitizen. He and his partner are expecting a child in April 2025. He has lived in the United States for over thirty years, but neither he nor his partner has any immigration status.

59. LULAC's members include noncitizens who have a variety of immigration statuses. Specifically, LULAC's members include lawful permanent residents, student visa holders, asylees, refugees, parolees, noncitizens with Temporary Protected Status ("TPS"), DACA recipients, applicants for immigration relief including asylum, and undocumented noncitizens. Some of these members are currently expecting children who may be deemed to be covered by the order.

60. For example, "Carmen" is a member of LULAC and a noncitizen. Carmen is expecting a child. Carmen has lived in the United States for over 15 years and has a pending application for a U visa, which provides a path to permanent immigration status to victims of certain crimes, but Carmen has no other immigration status. The father of Carmen's expected child also has no immigration status.

**D. Impact of the Order on Plaintiffs, their Members, and Other Families.**

61. Denying citizenship to the children of Plaintiffs' members, as well as other children being born every day throughout the country, would have devastating impacts on these families and on the United States as a whole.

62. Stripping children of the "priceless treasure" of citizenship, *Fedorenko*, 449 U.S. at 507, is a grave injury. It denies them the full membership in U.S. society to which they are entitled.

63. Allowing the Order to stand would "promot[e] the creation and perpetuation of a subclass" of children who were born in the United States but lack fundamental legal recognition and face stigma as a result of their novel and uncertain status. *Plyler v. Doe*, 457 U.S. 202, 230 (1982).

64. By attacking the principle that all children born in this country are citizens, the Order will invite persistent questioning of the citizenship of children of immigrants—particularly children of color.

65. The Order's denial of these children's citizenship will also have numerous other consequences.

66. Among other things, as they become adults, these children will, if stripped of their citizenship, be denied the right to vote in federal elections, *see* U.S. Const. art. 1, § 2; serve on federal juries, *see* 28 U.S.C. § 1865(b); serve in many elected offices, *see* U.S. Const. art. 2, § 1, cl. 5; id. art. 1, §§ 2, cl. 2, 3, cl. 3; and work in various federal jobs, *see, e.g.*, 35 U.S.C. § 3; 47 U.S.C. § 154(b)(1); 49 U.S.C. §§ 106, 114(b), 44935(e)(2)(A)(ii).

67. Once deemed to be noncitizens, the children of Plaintiffs' members and other similarly situated children will be subject to immigration enforcement by DHS, CBP, and ICE. This may include arrest, detention, and deportation to countries they have never even visited.

68. Improperly threatening children with arrest, detention, and deportation, and forcing them to grow up in fear of immigration enforcement, imposes harms on those children and their parents.

69. That fear is multiplied for parents who face further concern that their baby's removal would be to a country where their lives or freedom would be in danger.

70. United States passports are issued to United States citizens. *See* 22 U.S.C. § 212; 22 C.F.R. § 51.2(a). United States passports may be used for international travel, and as identification for many other purposes.

71. Children of Plaintiffs' members and other noncitizen families will be ineligible for passports under the Order.

72. Without passports, these children may not be able to travel outside the country to visit family. This threatens to undermine family ties and prevent noncitizens from traveling abroad to, for example, visit ailing relatives or celebrate a wedding.

73. Likewise, many families rely on passports as one of the only available forms of government identification for their children, which can be vital for both practical purposes, and to prove the child's identity and relationship to their parents in cases of contact with law enforcement or other government agencies.

74. The Order may also render children legally or effectively stateless. A U.S.-born child deemed to be a noncitizen may likewise not be recognized as a citizen under the laws of

their parents' country or countries of origin. Even if legally possible, practical barriers may prevent these children from being recognized as citizens of any other country.

75. For example, Gordon and his partner are citizens of Venezuela, which does not offer consular services in the United States. His child, once born, may be rendered effectively stateless.

76. Stateless people often lack access to education, employment, health care, and other rights, and face travel restrictions, social exclusion, and heightened vulnerability to violence and other harms.

77. Denying these children's citizenship may also render them ineligible for critical early-life nutritional resources and medical care. *See* 8 U.S.C. § 1611.

78. For example, U.S. citizen children are eligible for SNAP. SNAP provides access to critically important groceries for low-income households.

79. Because they would be deemed noncitizens under the Order, children of Plaintiffs' members risk being deemed ineligible for access to nutrition under SNAP. *See* 7 U.S.C. § 2015(f); 7 C.F.R. § 273.4.

80. For example, Gail and Thomas's household would likely financially qualify for SNAP. As a U.S. citizen, their child, once born, would be eligible for SNAP. But because of the Order, their child will likely be ineligible.

81. Ensuring access to nutritious food during early childhood is vital for children's physical and mental development, laying a foundation for future well-being.

82. Likewise, Carmen's household financially qualifies for federal health insurance under the Medicaid program, which provides medical insurance for low-income people. But under the Order, her child, once born, will likely be ineligible.

83. Access to medical care plays a critical role in improving life outcomes for children and leads to improved cognitive and physical growth.

84. Without it, children are at greater risk of avoidable hospitalizations and long-term health disparities.

85. Moreover, the denial of medical coverage may require members to forego necessities such as food and shelter in order to pay for medical expenses.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourteenth Amendment to the United States Constitution**
**(All Defendants)**

86. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

87. The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1.

88. The Citizenship Clause enshrined in the Constitution the fundamental common law rule of birth by citizenship, whereby all people born in the United States are citizens. The term "subject to the jurisdiction" excludes only a few inapplicable categories—today, just the children of foreign diplomats. All other children born in the United States are citizens, no matter the immigration status of their parents.

89. The Executive Order violates the Fourteenth Amendment's Citizenship Clause because it denies citizenship to the children of noncitizens who are born in the United States and subject to the jurisdiction of the United States.

## SECOND CLAIM FOR RELIEF
### 8 U.S.C. § 1401 *et seq.*
### (All Defendants)

90. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

91. 8 U.S.C. § 1401(a) provides that "a person born in the United States, and subject to the jurisdiction thereof" is a citizen of the United States. *See also id.* §§ 1402, 1406(b), 1407(b).

92. This language mirrors the Fourteenth Amendment's Citizenship Clause. In this statute, Congress codified the Fourteenth Amendment's existing interpretation, which established citizenship for children regardless of the immigration status of their parents.

93. The Executive Order violates 8 U.S.C. § 1401 *et seq.* because it denies citizenship to the children of noncitizens who are born in the United States and subject to the jurisdiction of the United States.

## THIRD CLAIM FOR RELIEF
### Administrative Procedure Act
### (All Defendants except Defendant Trump)

94. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

95. The actions of Defendants that are required or permitted by the Executive Order, as set forth above, are contrary to constitutional right, power, privilege, or immunity, including rights protected by the Fourteenth Amendment to the U.S. Constitution, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

# FOURTH CLAIM FOR RELIEF
## Administrative Procedure Act
### (All Defendants except Defendant Trump)

96. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

97. The actions of Defendants that are required or permitted by the Executive Order, as set forth above, violate 8 U.S.C. § 1401 *et seq.* and are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C).

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court grant the following relief:

a. Declare that the Executive Order is unconstitutional and unlawful in its entirety;

b. Preliminarily and permanently enjoin Defendants from enforcing the Executive Order;

c. Require Defendants to pay reasonable attorneys' fees and costs;

d. Grant any other and further relief that this Court may deem just and proper.

Dated: January 20, 2025         Respectfully submitted,

/s/ SangYeob Kim

| | |
|---|---|
| Cody Wofsy* | SangYeob Kim (N.H. Bar No. 266657) |
| Hannah Steinberg* | Gilles R. Bissonnette (N.H. Bar. No. 265393) |
| Stephen Kang* | Henry R. Klementowicz (N.H. Bar. No. 21177) |
| Spencer Amdur* | |
| AMERICAN CIVIL LIBERTIES | Chelsea Eddy (N.H. Bar No. 276248) |
| UNION FOUNDATION | AMERICAN CIVIL LIBERTIES UNION |
| IMMIGRANTS' RIGHTS PROJECT | OF NEW HAMPSHIRE |
| 425 California Street, Suite 700 | 18 Low Avenue |
| San Francisco, CA 94104 | Concord, New Hampshire 03301 |
| T: (415) 343-0770 | T: 603.224.5591 |
| cwofsy@aclu.org | sangyeob@aclu-nh.org |
| hsteinberg@aclu.org | gilles@aclu-nh.org |
| skang@aclu.org | henry@aclu-nh.org |

samdur@aclu.org

Noor Zafar*
Wafa Junaid*
Grace Choi*
Lee Gelernt*
Omar Jadwat*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
nzafar@aclu.org
wjunaid@aclu.org
gchoi@aclu.org
lgelernt@aclu.org
ojadwat@aclu.org

Morenike Fajana*
Ashley Burrell*
Elizabeth Caldwell*
Morgan Humphrey*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St., FL 5,
New York, NY 10006
(212) 217-1690
mfajana@naacpldf.org
aburrell@naacpldf.org
bcaldwell@naacpldf.org
mhumphrey@naacpldf.org

Mide Odunsi*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 249-2193
modunsi@naacpldf.org

chelsea@aclu-nh.org

Norm Eisen†*
Tianna Mays†*
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, #15180
Washington, D.C. 20003
T: (202) 594-9958
norman@statedemocracydefenders.org
tianna@statedemocracydefenders.org

Christopher M. Lapinig*
Kimberly Wei Leung*
Winifred Kao*
ASIAN LAW CAUCUS
55 Columbus Ave
San Francisco, CA 94111
T: (415) 896-1701
christopherl@asianlawcaucus.org
kimberlyl@asianlawcaucus.org
winifredk@asianlawcaucus.org

Carol Garvan (N.H. Bar. No. 21304)
Zachary L. Heiden*
AMERICAN CIVIL LIBERTIES UNION OF MAINE
FOUNDATION
P.O. Box 7860
Portland, Maine 04112
T: (207) 619.8687
cgarvan@aclumaine.org
heiden@aclumaine.org

Adriana Lafaille*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza
Suite 850
Boston, MA 02108
T: (617) 482-3170
alafaille@aclum.org

*Counsel for Plaintiffs*
†*Counsel for LULAC only*
\* *Application for admission pro hac vice forthcoming*