# EXHIBIT 16

ISSUE BRIEF:
# IN HARM'S WAY: THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



In 2023, the United States welcomed 3.6 million babies into the world. Each of these newborns arrives full of hope and great potential. Since the inclusion of the Fourteenth Amendment's Citizenship Clause in the Constitution in 1868, the U.S. has operated under the premise that every baby has an equal right to belong and engage in the "pursuit of happiness."

The Fourteenth Amendment has served as a cornerstone to the commitment that every child born in the United States should be protected from discrimination and a caste-like system based on the race, ethnicity, country of origin, or immigration status of their parents.[1]

"Birthright citizenship" demonstrates the nation's goal – after the Civil War – of striving to achieve fairness, inclusion, and opportunity. Over the last 156 years, it has provided millions of children every single year with a solid foundation to grow, thrive, and contribute to our society.

This core tenet of the Fourteenth Amendment is now under threat. Since 1991, legislation has been introduced in Congress to eliminate birthright citizenship for children born in the United States to undocumented parents. Presidential candidates, including President Donald Trump since 2015, have also expressed support for changes to the Citizenship Clause.[2]

Although proponents of abolishing birthright citizenship argue that it might deter immigration, there is no evidence this would be the case. Moreover, efforts to unmake birthright citizenship fail to address the reality that such a policy change would inflict significant harm on babies and children.

Unfortunately, children are often invisible or treated as an afterthought during public policy debates. In far too many cases, decisions are made without attention to or focus on the impact of the policy options on children, even when the issue is predominately related to children.

As Michael Freeman, author of *The Moral Status of Children*, points out:

> *All too rarely is consideration given to what policies…do to children. This is all the more the case where the immediate focus of the policy is not children. But even in children's legislation the unintended or indirect effects of changes are not given the critical attention they demand…*[3]

As an example, the debate over birthright citizenship is not just a debate over immigration policy. It is a fundamental question of who we are as a country and how we treat our youngest and most vulnerable residents. Stripping away citizenship at birth would create a new class of undocumented or stateless children – condemning millions of children to lives in the shadows of society without the protections and opportunities that citizenship provides. These children would be subjected to life-long discrimination, the denial of all types of benefits and services, and a negative impact on their short- and long-term growth and development.

As a nation, we should strive to do better for our children. Birthright citizenship helps children and their development, which, in turn, benefits society.

ISSUE BRIEF:
**IN HARM'S WAY:** THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



## The History of Birthright Citizenship

The Citizenship Clause of the Fourteenth Amendment to the U.S. Constitution. Section 1 establishes and clarifies that children born in the U.S. are guaranteed birthright citizenship or *jus soli* (Latin for "right of the soil"). Section 1 reads:

> *All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside.*

After the Civil War, the Fourteenth Amendment was ratified in 1868 with the intent of overturning the Supreme Court's most infamous *Dred Scott* decision in 1857, which had ruled that Black people could never be citizens of the country due to their race.[4]

According to constitutional law scholar Garrett Epps:

> *After the crime of slavery, the Framers of the Fourteenth Amendment wanted to create a new nation in which there would no sub-humans, no inferior caste that could be sold onto plantations or herded into camps. The citizenship clause is a key part of the structure they built.*[5]

If there was any ambiguity as to how the babies of undocumented immigrants should be treated, the 1898 Supreme Court decision in the case of *United States v. Wong Kim Ark* provided more clarity. In the majority 6-2 opinion, Justice Horace Gray wrote that the Fourteenth Amendment:

> *…contemplates two sources of citizenship, and two only: birth and naturalization. Citizenship by naturalization can only be acquired by naturalization under the authority and in the forms of law. But citizenship by birth is established by the mere fact of birth under the circumstances defined in the Constitution. Every person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization.*[6]

Justice Gray added that the Fourteenth Amendment "was not intended to impose any new restrictions upon citizenship" but "to put in beyond doubt that all blacks, as well as whites, born or naturalized within the jurisdiction of the United States are citizens of the United States."[7]

That decision has both clarified and strengthened the operating principle of "birthright citizenship" in the United States.[8]

## Why This Matters the Most to Babies

For babies and children, the Citizenship Clause in the Fourteenth Amendment and the decision in *United States v. Wong Kim Ark* is critically important. These actions did more than overturn Dred Scott. As Amanda Frost explains:

> *No group who made their home in the United States could be perpetually excluded because of their race, ethnicity, religion, immigration status, social class, or former condition of servitude.*[9]

Citizenship is not merely an identity or status; it is foundational for accessing health care, nutrition, early education, housing, and much more. Creating bureaucratic obstacles risks delaying – or denying altogether – the support babies and children need at their most formative stages.

# ISSUE BRIEF:
## IN HARM'S WAY: THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE





When a child is born in a hospital, the facility gathers basic information that is used to complete a birth certificate by the state and a parent can request a Social Security number for their child – both of which are used as legal documents to demonstrate citizenship status of millions of babies every single year.[10]

The benefits of citizenship are important to all 3.6 million children born in this country annually. Birthright citizenship confers simple and automatic nationality without impediments, such as the need for bureaucratic paperwork, legal barriers, bureaucratic interpretations, delays, errors, or the period of limbo status awaiting a decision from some currently unidentified bureaucracy.

By virtue of their birth, children are U.S. citizens who obtain "civil status" and become eligible for all the benefits of U.S. citizenship, including access to items, services, and benefits, such as the Child Tax Credit, Medicaid, the Supplemental Nutrition Assistance Program (SNAP), WIC, Vaccines for Children (VFC), and child care. As advocate Wendy Cervantes points out, "By conferring citizenship at birth, our youngest citizens are guaranteed important safeguards to promote their health and development."[11]

In sharp contrast, if newborns in this country had citizenship determined based on blood, known as *jus sanguinis* (Latin for "right of blood"), rather than birth, a baby's nationality would be dependent on the adjudication and affirmation of citizenship by the government based on the documentation of nationality of one's parents. Such a process, which takes place in many other countries, is much more like the complex and bureaucratic citizenship adjudication procedure required for babies born to American parents in other countries.[12]

According to attorney Margaret Stock:

> *Proving one's parents' citizenship or immigration status at the moment of one's birth can be difficult, because apart from the simple birthright citizenship rule, U.S. citizenship and immigration laws are complex, and a parent's status is often a moving target…*[13]

This bureaucratic legal hurdle is complicated enough that it often necessitates the hiring of legal expertise, which would add to the significant costs to parents of having a baby in the United States. Stock adds:

> *Parents will presumably be required to submit paperwork proving their citizenship or immigration status to a government agency tasked with determining whether a child is a citizen or not; that agency will have to review the paperwork, determine what the parents' status was at the time of the child's birth, and make a decision about the child's citizenship – and that bureaucratic decision will determine whether the child is recognized as a U.S. citizen (or not).*[14]

This process would require a more elaborate bureaucratic structure than the U.S. currently has to determine the citizenship of all 3.6 million babies born annually in this vast nation. This added bureaucracy

# ISSUE BRIEF:
## IN HARM'S WAY: THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



would cost the nation's taxpayers billions of dollars, and it would impose new burdens and costs upon the parents of every baby born in this country – whether the baby eventually is deemed a citizen or not.

Such a change raises numerous policy questions and challenges related to identifying and documenting the citizenship status of a baby's parents, such as: determining the paternity and citizenship status of an unwed father, disputes over the paternity status of a baby, the status of a baby given up for adoption, the status of a baby who was conceived via in vitro fertilization (IVF), intrauterine insemination (IUI) or surrogacy, the determination of a baby's status with same-sex parents, the agency making such determinations, the appeals rights available to a child, the failure of parents to apply for the citizenship of their child, etc.[15] Proponents of ending birthright citizenship have failed to outline how any of this would work, including any of the challenges that would need to be addressed.



There would also be the burden of delay that these factors present in obtaining citizenship, which could negatively impact every child born in this country while their official status remains in limbo. Babies would be denied access to benefits or services during the most critical developmental period in a person's life while awaiting adjudication of their citizenship application.

In short, eliminating birthright citizenship would negatively impact all babies born in this country in one way or another. In fact, it is important to underscore that such a policy change would exclusively harm one group of people in this country: babies.[16]

And that harm would be imposed upon a group – children – who are innocent and have been brought into this world and this country through the decisions made by others. Inflicting disabling and crushing penalties on babies and children as punishment for the legal circumstances of adults would be unfair, immoral, and detrimental.

In the Supreme Court case *Plyler v. Doe* (1982), which struck down efforts in the State of Texas to deny or charge tuition to non-citizen children for public education, Justice William J. Brennan noted that children in the case were neither responsible for their parents nor their immigration status, and nor could they affect it. Justice Brennan argued:

> *Even if the State found it expedient to control the conduct of adults by acting against their children, legislation directing the onus of a parent's misconduct against his children does not comport with fundamental conceptions of justice.*[17]

# ISSUE BRIEF:
# IN HARM'S WAY: THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



## The Harm to Children and Society of Eliminating Birthright Citizenship

*Citizenship is man's basic right, for it is nothing less than the right to have rights. Remove this priceless possession and there remains a stateless person….* – Chief Justice Earl Warren[18]

Despite the Fourteenth Amendment to the Constitution (i.e., the Citizenship Clause, the Due Process Clause, and the Equal Protection Clause), Supreme Court decisions, and years of laws, regulations, standard practices, public understanding, and generations of children being born as U.S. citizens under the principle of "birthright citizenship," there have been recent calls to repeal birthright citizenship via constitutional amendment, congressional action, or executive order.

Most legal experts believe that such a change would require a constitutional amendment.[19] As conservative columnist George Will put it:

> *Congress controls naturalization policies, but the Constitution, by the citizenship clause, puts birthright citizenship above the vicissitudes of politics.*[20]

Yet, the "vicissitudes of politics" are growing. In Congress, bills were introduced in 1991 by Rep. Elton Gallegy (R-CA) to eliminate birthright citizenship by either congressional action or constitutional amendment.

Since then, bills have been introduced in most sessions of Congress, including the current one. In the 118th Congress, the Birthright Citizenship Act (S. 5223/H.R. 6612) by Sen. Lindsey Graham (R-SC) and Rep. Brian Babin (R-TX), the Constitutional Citizenship Clarification Act (S. 4439) by Sen. Tom Cotton (R-AR), the End Birthright Citizenship Fraud Act (H.R. 4864) by Rep. Matt Gaetz (R-FL), and the Build the Wall and Deport Them All Act (H.R. 7594) by Rep. Lauren Boebert (R-CO) have been introduced.

Furthermore, presidential candidates, such as President Donald Trump,[21] his vice-presidential running mate J.D. Vance,[22] and past Republican presidential candidates Ted Cruz, Lindsey Graham, and Ben Carson in 2015-2016,[23] and Ron DeSantis, Nikki Haley, and Vivek Ramaswamy in 2023-2024[24] have expressed support for eliminating birthright citizenship in some fashion.



Regardless of the rationale or how they seek to abolish or undermine the Citizenship Clause, proponents often argue their intent is to deter immigration, but rarely mention or appear to consider the impact such a change might have on children.

Law professor Polly J. Price points out, "These children will not have chosen their situation, nor will they have violated any U.S.-immigration laws."[25]

And yet, abolishing or modifying "birthright citizenship" would impose penalties and harm upon U.S.-born babies

ISSUE BRIEF:
**IN HARM'S WAY:** THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



brought into the world and establish a two-tier caste system among children that would include, as Stock points out, "a large class of stateless children who do not have strong ties to any other nation."[26] These children would grow up in the shadows of society under the threat of deportation at any time. Unlike their classmates, neighbors, and friends, they would be less likely to grow up with the tools necessary to be healthy and successful.

In the Supreme Court decision *Weber v. Aetna Casualty and Surety. Co.* (1972), which ruled that a state law denying benefits to children born out of wedlock violated the Equal Protection Clause, Justice Lewis F. Powell, Jr., explained:

> *[V]isiting…condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the…child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility and wrongdoing. Obviously, no child is responsible for his birth and penalizing the…child is an ineffectual – as well as unjust – way of deterring the parent.*[27]

Just as denying babies and children benefits because they were born out of wedlock – a situation beyond their control – is "illogical and unjust," so is denying babies and children U.S. citizenship to punish their parents for being undocumented immigrants.

Law professor Christopher L. Eisgruber explains, "A cardinal constitutional principle…prohibits imputing responsibility to children for their parents' choices."[28]

It's important to remember that children rely on policymakers, advocates, and citizens to protect their interests because they cannot advocate for themselves. It is morally indefensible to enact a law that deprives them of their right to belong.

As to the affirmative responsibility of government to children, professor Nancy E. Dowd writes:

> *The state's obligation is linked to its parens patriae role. In part, this is a corrective role linked to the notion that the state should not harm children; indeed, it is responsible to protect them from harm.*[29]

Abolishing or undermining the principle of birthright citizenship fails this simple test and could potentially impose severe and life-long negative consequences on babies denied citizenship at birth. For children impacted by the denial of citizenship at birth, including "statelessness,"[30] their future is bleak.

Those consequences include:

- **Increased Burdens, Costs, and Harm to Babies:** Pregnancy and childbirth should be a time when society steps up with care and support, and not added costs, stress, paperwork, burdens, and added legal complications. The true victims of ending birthright citizenship are babies and children. That is a policy choice.

- **Childhood and Life in the Shadows:** Whether children born in this country are denied citizenship and are left undocumented or stateless, the lives of these children will be marked by marginalization, stress, fear, and vulnerability. Stateless populations are individuals without legal recognition, exist in the shadows of society, are more likely to be exploited, live in poverty, and lack access to health care, housing, and nutrition. As Claire Green describes statelessness, "In its essence, statelessness is a form of invisibility, an existence without belonging."[31]

**ISSUE BRIEF:**
**IN HARM'S WAY:** THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



- **Barriers to Care and Poorer Outcomes:** For children who are undocumented and may also be stateless (i.e., have no country that claims them as a citizen), they are ineligible for many public programs and avoid obtaining services from programs to which there is not a citizenship requirement (referred to as the "chilling effect"[32]). Lack of access to care, benefits, and services negatively impacts virtually every aspect of the lives of children.[33]

- **Foregone Potential:** Undocumented and stateless children cannot achieve their full potential. As Price writes, "When the children grow up, the lack of citizenship or identity documents prevent them from entering the formal labor market, obtaining a driver's license or voter registration documents, opening bank accounts, marrying legally, or even registering the births of their own children."[34] This will reduce future growth in the U.S. economy and tax base.

- **Reimposing Discrimination:** The purpose of the authors of the Citizenship Clause was clear, which was to ensure that the Constitution overturned Dred Scott and prevented politics and past history from being recreated. There would be a new "two-tiered system" of citizenship for children that human rights expert Katherine Culliton-González notes, "by virtue of regulating birth, the main focus of such laws would be on women and their babies, and in this context, on Latina immigrant women and their babies. This implicates rights to freedom from race, ethnic, national origin and gender discrimination, as well as the rights of children."[35]

- **Loss of Millions of Younger U.S. Citizens:** At a time when our nation's population is rapidly aging and will need a strong, robust younger generation to ensure a continued thriving economy and funding to pay for programs such as Medicare and Social Security for previous generations,[36] it makes little to no sense to cut the number of younger U.S. citizens and to create significant impediments and barriers to the potential well-being and success of millions of children over time.[37]

Demographer Dowell Myers explains, "[The] relative shortage of children means each child — regardless of gender, ethnicity, geographic residence or economic background — is proportionately more important to our future than ever before. Beyond our moral obligation to care for children for their own sake, our future economy, our standard of living, and our place as a leader in the world demand that children become our highest priority."[38]

## Protecting Children Rather than Putting Them in Harm's Way

Infants born in the U.S. do not choose the circumstances of their birth. Whether their parents are citizens, permanent residents, refugees, undocumented immigrants, or have mixed statuses, these children are born into our communities, our hospitals, and our neighborhoods. Children need our help and support to thrive and fulfill their potential. Denying them citizenship is a cruel and unjust punishment for actions they did not commit. Rather than promoting children's best interests, public policy would subject them to discrimination, exclusion, exploitation, and harm.

Epps writes:

> …the children have committed no crime at birth; have violated no law; have not transgressed the implied promise of a visa. To punish babies, much less to proscribe and entirely outlaw them, because of the perceived sins of their parents is alien to our moral and ethical tradition. Guilt is not hereditary; it is

Case 1:25-cv-00038-JL-TSM     Document 24-21     Filed 01/21/25     Page 9 of 13

ISSUE BRIEF:
**IN HARM'S WAY:** THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



*individual. We do not impose legal disabilities on the children of felons, for example, no matter how heinous their parents' actions. The conscience revolts at the idea, and the Constitution itself rejects ancestral guilt as a basis for policy.*[39]

This attack on birthright citizenship is an attack on children and their best interests. By framing it as an immigration control measure, politicians are turning babies into political scapegoats, placing their futures at risk for the sake of political opportunism. Babies denied citizenship at birth would grow up marginalized and without the protections that every child born in the United States should receive. This would occur despite the fact babies have committed no crime, have violated no law, and deserve the protections of citizenship and fairness guaranteed by the Constitution.

Every child born in the United States deserves a chance to thrive and belong. This is our moral duty, and it is theirs by right.

*This issue brief was written by the President of First Focus on Children and First Focus Campaign for Children, Bruce Lesley.*

ISSUE BRIEF:
**IN HARM'S WAY:** THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



## ENDNOTES

1. The exception is the children of foreign diplomats.

2. Khalid, A. (2015, Aug. 17). What's In Donald Trump's Immigration Plan and How It Could Affect the GOP. Retrieved from NPR: https://www.npr.org/sections/itsallpolitics/2015/08/17/432605103/whats-in-donald-trumps-immigration-plan; Trump, D. (2018, Oct. 31). @realDonaldTrump. Retrieved from Twitter: https://x.com/realDonaldTrump/status/1057624553478897665; Liptak, K., & Cole, D. (2018, Oct. 31). Trump claims he can defy Constitution and end birthright citizenship. Retrieved from CNN: https://www.cnn.com/2018/10/30/politics/donald-trump-ending-birthright-citizenship/index.html; LeBlanc, P. (2019, Aug. 22). Trump again says he's looking 'seriously' at birthright citizenship despite 14th Amendment. Retrieved from CNN: https://www.cnn.com/2019/08/21/politics/trump-birthright-citizenship-14th-amendment/index.html; Hesson, T. (2023, May 30). Trump vows to end birthright citizenship for children of immigrants in US illegally. Retrieved from Reuters: https://www.reuters.com/world/us/trump-vows-end-birthright-citizenship-children-immigrants-us-illegally-2023-05-30/. Bernal, R. (2023, May 30). Trump pledges to end birthright citizenship on first day in office. Retrieved from The Hill: https://thehill.com/homenews/campaign/4026334-trump-pledges-to-end-birthright-citizenship-on-first-day-in-office/.

3. Freeman, M. (1997). The Moral Status of Children. The Hague: Kluwer Law International.

4. Supreme Court of the United States (1857). Dred Scott v. Sandford, 60 U.S. 19 How. 393.

5. Epps, G. (2015, Sep. 1). The Problems with Challenging Birthright Citizenship. Retrieved from The Atlantic: https://www.theatlantic.com/politics/archive/2015/09/the-problem-with-challenging-birthright-citizenship/403147/.

6. Supreme Court of the United States (1857). Dred Scott v. Sandford, 60 U.S. 19 How. 393.

7. Ibid.

8. Stock, M., & Kazemi, N. (2021). The Non-Controversy Over Birthright Citizenship: Defending the Original Understanding of Jus Soli Citizenship. Chapman Law Review, 24, 1-26.

9. Frost, A. (2021). "By Accident of Birth": The Battle over Birthright Citizenship After United States v. Wong Kim Ark. Yale Journal of Law & the Humanities, 32(1), 38-76.

10. Stock, M. (2012, Mar.). The Cost to Americans and America of Ending Birthright Citizenship. Retrieved from National Foundation for American Policy; Stock & Kazemi (2021); Remus, A. R. (2023). Caught Between Sovereigns: Federal Agencies, States, and Birthright Citizens. Stanford Law & Policy Review, 34(225), 225-259.

11. Cervantes, W. (2015, Sep.). Birthright Citizenship: A Fundamental Right for America's Children. Retrieved from First Focus on Children: https://firstfocus.org/resource/birthright-citizenship-a-fundamental-right-for-americas-children/. See also, Lesley, B. (2023, Oct. 17). From Cradle to Limbo: The Immediate and Long-Term Dangers of Repealing Birthright Citizenship for Children. Retrieved from Substack: https://brucelesley.substack.com/p/from-cradle-to-limbo-the-immediate.

12. Price, P. J. (2013). Stateless in the United States: Current Reality and a Future Prediction. Vanderbilt Journal of Transnational Law, 46, 443-514.

13. Stock, M. D. (2012, Winter). Is Birthright Citizenship Good for America? Cato Journal, 32(1), 139-157.

14. Ibid.

15. Collins, K. A. (2014). Illegitimate Borders: Jus Sanguinis Citizenship and the Legal Construction of Family, Race, and Nation. Yale Law Journal, 123(7), 2134-2235; Price, P. J. (2013). Stateless in the United States: Current Reality and a Future Prediction. Vanderbilt Journal of Transnational Law, 46, 443-514; Rierson, S. L. (2023). From Dred Scott to Anchor Babies: White Supremacy and the Contemporary Assault on Birthright Citizenship. Georgetown Immigration Law Journal, 38(1), 1-70; Bruce, L. K. (2019). How to Explain to Your Twins Why Only One Can Be American: The Right to Citizenship of Children Born to Same-Sex Couples Through Assisted Reproductive Technology. Fordham Law Review, 88(3), 999-1031.

16. Lesley, B. (2018, Nov. 5). Ending Birthright Citizenship Targets and Harms...Babies. Retrieved from Substack: https://brucelesley.substack.com/p/ending-birthright-citizenship-targets-and-harms-babies-df15996df26;

17. Supreme Court of the United States (1982). Plyler v. Doe, 457 U.S. 202.

18. Supreme Court of the United States (1958). Perez v. Brownell, 356 U.S. 44. Quote is from Chief Justice Warren's dissenting opinion.

# ISSUE BRIEF:
# IN HARM'S WAY: THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



19. Epps, G. (2010). The Citizenship Clause: A "Legislative History". American University law Review, 60(2), 331-388; Eisgruber, C. L. (1997, Apr.). Birthright Citizenship and the Constitution. New York University Law Review, 72, 54-95; Rodriguez, C. M. (2009, Jul.). The Citizenship Clause, Original Meaning, and the Equalitarian Unity of the Fourteenth Amendment. Journal of Constitutional Law, 11(5), 1363-1371; Rierson (2023); Stock & Kazemi (2021).

20. Will, G. F. (2024, Aug. 23). Memo to Trump: Birthright citizenship is a constitutional right. Period. Retrieved from Washington Post: https://www.washingtonpost.com/opinions/2024/08/23/trump-birthright-citizenship-constitutional/. See also, Tribe, L. H. (2018, Nov. 2). Trump's Evil Threat on Birthright Citizenship is an Attack on America. Retrieved from Newsweek: https://www.newsweek.com/laurence-tribe-trumps-evil-threat-birthright-citizenship-attack-america-1198142.

21. See footnote 2.

22. Tabitha, M. (2024, Aug. 1). @Tabitha_Mueller. Retrieved from Twitter: https://x.com/tabitha_mueller/status/1819044279857434667.

23. Sorkin, D. A. (2015, Sep. 15). The Anchor Baby Question at the G.O.P. Debate. Retrieved from The New Yorker: https://www.newyorker.com/news/amy-davidson/the-anchor-baby-question-at-the-g-o-p-debate; Lach, E. (2018, Oct. 30). Trump, Birthright Citizenship, and the Politics of Fear and Rage. Retrieved from The New Yorker: https://www.newyorker.com/news/current/trump-birthright-citizenship-and-the-politics-of-fear-and-rage.

24. Greenwood, M., & Ceballos, A. (2023, Jun. 28). End birthright citizenship? DeSantis' promise may be easier said than done. Retrieved from Tampa Bay Times: https://www.tampabay.com/news/florida-politics/2023/06/28/desantis-birthright-citizenship-immigrants-constitution/; Sforza, L. (2023, Sep. 28). Ramaswamy says at debate he would end birthright citizenship, echoing Trump. Retrieved from The Hill: https://thehill.com/homenews/campaign/4227711-ramaswamy-end-birthright-citizenship-2024-debate/; Garsd, J. (2023, Dec. 13). Where the Republican presidential candidates stand on immigration. Retrieved from NPR: https://www.npr.org/2023/12/13/1218935981/republican-candidates-immigration.

25. Price (2013).

26. Stock (2012, Winter).

27. Supreme Court of the United States (1972). Weber v. Aetna Casualty and Surety Co., 406 U.S. 164.

28. Eisgruber, C. L. (1997, Apr.). Birthright Citizenship and the Constitution. New York University Law Review, 72, 54-95. See also, Buhler, S. (2002, Jan.). Babies as Bargaining Chips - In Defense of Birthright Citizenship in Canada. Journal of Law and Social Policy, 17, 87-114.

29. Dowd, N. E. (2020). Children's Equality Rights: Every Child's Right to Develop to their Full Capacity. Cardozo Law Review, 41, 1367-1440. See also, Ferracioli, L. (2018). Citizenship for Children: By Soil, by Blood, or by Paternalism? Philosophical Studies, 175(11), 2859-2877.

30. According to the (United Nations High Commissioner for Refugees (UNHCR), "The international legal definition of a stateless person is 'a person who is not considered as a national by any State under the operation of its law.' In simple terms, this means that a stateless person does not have the nationality of any country. Some people are born stateless, but others become stateless." Retrieved from https://www.unhcr.org/ibelong/about-statelessness/.

31. Green, C. (2023, May 11). Invisibility: Bringing Statelessness to the Forefront of U.S. Political Advocacy.

32. Gonzalez, D., Haley, J. M., & Kenney, G. M. (2023, Nov. 30). One in Six Adults in Immigrant Families with Children Avoided Public Programs in 2022 Because of Green Card Concerns. Retrieved from Urban Institute: https://www.urban.org/research/publication/one-six-adults-immigrant-families-children-avoided-public-programs-2022.

33. Flores, G., & Lesley, B. (2014, Oct. 20). Children and US Federal Policy on Health and Health Care: Seen but Not Heard. JAMA Pediatrics; Acevado-Garcia, D., Joshi, P. K., Ruskin, E., Walters, A. N., Sofer, N., & Guevara, C. A. (2021). Including Children in Immigration Families in Policy Approaches to Reduce Child Poverty. Academic Pediatrics, 21, S117-S125; Philipsborn, R. P., Sorcher, E. A., Sexson, W., & Evans, H. H. (2020, Nov. 17). Born on U.S. Soil: Access to Healthcare for Neonates of Non-Citizens. Maternal and Child Health Journal, 1-6; Thompson, O. (2017). The long-term health impacts of Medicaid and CHIP. Journal of Health Economics, 51, 26-40.

34. Price, P. J. (2013). See also, Rierson (2023).

35. Culliton-González, K. (2012). Born in the Americas: Birthright Citizenship and Human Rights. Harvard Human Rights Journal, 25, 127-182; see also, Epps (2015), see footnote 5.

**ISSUE BRIEF:**
**IN HARM'S WAY:** THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



36. Stock (2012, Mar.).
37. Van Hook, J., & Fix, M. (2010, Sep.). The Demographic Impacts of Repealing Birthright Citizenship. Retrieved from Migration Policy Institute.
38. Myers, D. (2017, Oct.). The New Importance of Children in America. Retrieved from Lucile Packard Foundation for Children's Health: https://lpfch.org/resource/the-new-importance-of-children-in-america/.
39. Epps (2010).

## WORKS CITED

1. Acevado-Garcia, D., Joshi, P. K., Ruskin, E., Walters, A. N., Sofer, N., & Guevara, C. A. (2021). Including Children in Immigration Families in Policy Approaches to Reduce Child Poverty. Academic Pediatrics, 21, S117-S125.
2. Bernal, R. (2023, May 30). Trump pledges to end birthright citizenship on first day in office. Retrieved from The Hill: https://thehill.com/homenews/campaign/4026334-trump-pledges-to-end-birthright-citizenship-on-first-day-in-office/
3. Bruce, L. K. (2019). How to Explain to Your Twins Why Only One Can Be American: The Right to Citizenship of Children Born to Same-Sex Couples Through Assisted Reproductive Technology. Fordham Law Review, 88(3), 999-1031.
4. Buhler, S. (2002, Jan.). Babies as Bargaining Chips - In Defense of Birthright Citizenship in Canada. Journal of Law and Social Policy, 17, 87-114.
5. Cervantes, W. (2015, Sep.). Birthright Citizenship: A Fundamental Right for America's Children. Retrieved from First Focus on Children: https://firstfocus.org/resource/birthright-citizenship-a-fundamental-right-for-americas-children/
6. Collins, K. A. (2014). Illegitimate Borders: Jus Sanguinis Citizenship and the Legal Construction of Family, Race, and Nation. Yale Law Journal, 123(7), 2134-2235.
7. Culliton-González, K. (2012). Born in the Americas: Birthright Citizenship and Human Rights. Harvard Human Rights Journal, 25, 127-182.
8. Dowd, N. E. (2020). Children's Equality Rights: Every Child's Right to Develop to their Full Capacity. Cardozo Law Review, 41, 1367-1440.
9. Eisgruber, C. L. (1997, Apr.). Birthright Citizenship and the Constitution. New York University Law Review, 72, 54-95.
10. Epps, G. (2010). The Citizenship Clause: A "Legislative History". American University law Review, 60(2), 331-388.
11. Epps, G. (2015, Sep. 1). The Problems with Challenging Birthright Citizenship. Retrieved from The Atlantic: https://www.theatlantic.com/politics/archive/2015/09/the-problem-with-challenging-birthright-citizenship/403147/
12. Flores, G., & Lesley, B. (2014, Oct. 20). Children and US Federal Policy on Health and Health Care: Seen but Not Heard. JAMA Pediatrics.
13. Freeman, M. (1997). The Moral Status of Children. The Hague: Kluwer Law International.
14. Frost, A. (2021). "By Accident of Birth": The Battle over Birthright Citizenship After United States v. Wong Kim Ark. Yale Journal of Law & the Humanities, 32(1), 38-76.
15. Garsd, J. (2023, Dec. 13). Where the Republican presidential candidates stand on immigration. Retrieved from NPR: https://www.npr.org/2023/12/13/1218935981/republican-candidates-immigration
16. Gonzalez, D., Haley, J. M., & Kenney, G. M. (2023, Nov. 30). One in Six Adults in Immigrant Families with Children Avoided Public Programs in 2022 Because of Green Card Concerns. Retrieved from Urban Institute: https://www.urban.org/research/publication/one-six-adults-immigrant-families-children-avoided-public-programs-2022
17. Green, C. (2023, May 11). Invisibility: Bringing Statelessness to the Forefront of U.S. Political Advocacy. Retrieved from University of San Francisco, Master's thesis: https://repository.usfca.edu/thes/1472/
18. Greenwood, M., & Ceballos, A. (2023, Jun. 28). End birthright citizenship? DeSantis' promise may be easier said than done. Retrieved from Tampa Bay Times: https://www.tampabay.com/news/florida-politics/2023/06/28/desantis-birthright-citizenship-immigrants-constitution/

ISSUE BRIEF:
**IN HARM'S WAY:** THE CONSEQUENCES OF DENYING BIRTHRIGHT CITIZENSHIP FOR AMERICA'S CHILDREN AND OUR FUTURE



19. Hesson, T. (2023, May 30). Trump vows to end birthright citizenship for children of immigrants in US illegally. Retrieved from Reuters: https://www.reuters.com/world/us/trump-vows-end-birthright-citizenship-children-immigrants-us-illegally-2023-05-30/
20. Khalid, A. (2015, Aug. 17). What's In Donald Trump's Immigration Plan And How It Could Affect The GOP. Retrieved from NPR: https://www.npr.org/sections/itsallpolitics/2015/08/17/432605103/whats-in-donald-trumps-immigration-plan
21. Lach, E. (2018, Oct. 30). Trump, Birthright Citizenship, and the Politics of Fear and Rage . Retrieved from The New Yorker: https://www.newyorker.com/news/current/trump-birthright-citizenship-and-the-politics-of-fear-and-rage
22. LeBlanc, P. (2019, Aug. 22). Trump again says he's looking 'seriously' at birthright citizenship despite 14th Amendment. Retrieved from CNN: https://www.cnn.com/2019/08/21/politics/trump-birthright-citizenship-14th-amendment/index.html
23. Lesley, B. (2018, Nov. 5). Ending Birthright Citizenship Targets and Harms…Babies. Retrieved from Substack: https://brucelesley.substack.com/p/ending-birthright-citizenship-targets-and-harms-babies-df15996df26
24. Lesley, B. (2023, Oct. 17). From Cradle to Limbo: The Immediate and Long-Term Dangers of Repealing Birthright Citizenship for Children. Retrieved from Substack: https://brucelesley.substack.com/p/from-cradle-to-limbo-the-immediate
25. Liptak, K., & Cole, D. (2018, Oct. 31). Trump claims he can defy Constitution and end birthright citizenship. Retrieved from CNN: https://www.cnn.com/2018/10/30/politics/donald-trump-ending-birthright-citizenship/index.html
26. Myers, D. (2017, Oct.). The New Importance of Children in America. Retrieved from Lucile Packard Foundation for Children's Health: https://lpfch.org/resource/the-new-importance-of-children-in-america/
27. Philipsborn, R. P., Sorcher, E. A., Sexson, W., & Evans, H. H. (2020, Nov. 17). Born on U.S. Soil: Access to Healthcare for Neonates of Non-Citizens. Maternal and Child Health Journal, 1-6.
28. Price, P. J. (2013). Stateless in the United States: Current Reality and a Future Prediction. Vanderbilt Journal of Transnational Law, 46, 443-514.
29. Remus, A. R. (2023). Caught Between Sovereigns: Federal Agencies, States, and Birthright Citizens. Stanford Law & Policy Review, 34(225), 225-259.
30. Rierson, S. L. (2023). From Dred Scott to Anchor Babies: White Supremacy and the Contemporary Assault on Birthright Citizenship. Georgetown Immigration Law Journal, 38(1), 1-70.
31. Rodriguez, C. M. (2009, Jul.). The Citizenship Clause, Original Meaning, and the Equalitarian Unity of the Fourteenth Amendment. Journal of Constitutional Law, 11(5), 1363-1371.
32. Sforza, L. (2023, Sep. 28). Ramaswamy says at debate he would end birthright citizenship, echoing Trump. Retrieved from The Hill: https://thehill.com/homenews/campaign/4227711-ramaswamy-end-birthright-citizenship-2024-debate/
33. Sorkin, D. A. (2015, Sep. 15). The Anchor Baby Question at the G.O.P. Debate. Retrieved from The New Yorker: https://www.newyorker.com/news/amy-davidson/the-anchor-baby-question-at-the-g-o-p-debate
34. Stock, M. (2012, Mar.). The Cost to Americans and America of Ending Birthright Citizenship. Retrieved from National Foundation for American Policy.
35. Stock, M. D. (2012, Winter). Is Birthright Citizenship Good for America? Cato Journal, 32(1), 139-157.
36. Stock, M., & Kazemi, N. (2021). The Non-Controversy Over Birthright Citizenship: Defending the Original Understanding of Jus Soli Citizenship. Chapman Law Review, 24, 1-26.
37. Tabitha, M. (2024, Aug. 1). @Tabitha_Mueller. Retrieved from Twitter: https://x.com/tabitha_mueller/status/1819044279857434667
38. Thompson, O. (2017). The long-term health impacts of Medicaid and CHIP. Journal of Health Economics, 51, 26-40.
39. Tribe, L. H. (2018, Nov. 2). Trump's Evil Threat on Birthright Citizenship is an Attack on America. Retrieved from Newsweek: https://www.newsweek.com/laurence-tribe-trumps-evil-threat-birthright-citizenship-attack-america-1198142
40. Trump, D. (2018, Oct. 31). @realDonaldTrump. Retrieved from Twitter: https://x.com/realDonaldTrump/status/1057624553478897665
41. Van Hook, J., & Fix, M. (2010, Sep.). The Demographic Impacts of Repealing Birthright Citizenship. Retrieved from Migration Policy Institute.
42. Will, G. F. (2024, Aug. 23). Memo to Trump: Birthright citizenship is a constitutional right. Period. Retrieved from Washington Post: https://www.washingtonpost.com/opinions/2024/08/23/trump-birthright-citizenship-constitutional/