UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

New Hampshire Indonesian
Community Support, et al.

      v.                                                                      Civil No. 25-cv-38-JL-TSM
                                                                                                             Opinion No. 2025 DNH 014 P

Donald J. Trump, President of the
United States, in his official capacity, et al.

**PRELIMINARY INJUNCTION ORDER**

        Plaintiff nonprofit groups—New Hampshire Indonesian Community Support, League of United Latin American Citizens, and Make the Road New York—ask this court to enjoin the enforcement of an executive order that would exclude certain groups of individuals from receiving birthright citizenship. They sue the President, the Secretary and Department of Homeland Security, the Secretary and Department of State, the Secretary and Department of Agriculture, and the Administrator of and Centers for Medicare and Medicaid Services (the persons in their official capacities).[1] The plaintiffs allege that a recent executive order involving birthright citizenship violates the Fourteenth Amendment of the United States Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act. *See* U.S. Const. amend. XIV, § 1; Immigration and Nationality Act, 8 U.S.C. § 1401; Administrative Procedure Act, 5 U.S.C. § 706(B).[2]

---

[1] *See* Compl. (doc. no. 1).
[2] *Id.* at ¶¶ 86-97.

After reviewing the parties' submissions and holding oral argument, the court grants the preliminary injunction. The court enjoins the defendants from enforcing the Executive Order in any manner with respect to the plaintiffs, and with respect to any individual or entity in any other matter or instance within the jurisdiction of this court, during the pendency of this litigation.

**Applicable legal standard.** "A preliminary injunction is an extraordinary equitable remedy that is never awarded as of right." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotations omitted)).

> "When a party seeks a preliminary injunction, the district court considers four long-established elements: (1) the probability of the movant's success on the merits of their claim(s); (2) the prospect of irreparable harm absent the injunction; (3) the balance of the relevant equities (focusing upon the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does); and (4) the effect of the court's action on the public interest."

*Santiago v. Mun. of Utuado*, 114 F.4th 25, 34–35 (1st Cir. 2024) (quoting *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 221 (1st Cir. 2003) (quotations omitted)). "The movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). The third and fourth factors "merge when the [g]overnment is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**The Executive Order.**  On January 20th, 2025, the President issued Executive Order No. 14160, titled "Protecting the Meaning and Value of American Citizenship."³  It provides that the Fourteenth Amendment of the Constitution "has never been interpreted to extend citizenship universally to everyone born within the United States" and that it "has always excluded from birthright citizenship persons who were born in the United States but not 'subject to the jurisdiction thereof.'"⁴

It then orders that "no department or agency of the United States government shall issue documents recognizing United States citizenship, or accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship, to persons" in two circumstances:

> "(1) when that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States was lawful but temporary, and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth."⁵

By its terms, the Executive Order takes effect on February 19th, 2025.⁶

**Procedural history.**  The plaintiff organizations include pregnant members who will give birth after the Executive Order becomes operative.⁷  For various reasons, the

---

³ Protecting the Meaning and Value of American Citizenship, Executive Order No. 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025).
⁴ *Id*.
⁵ *Id.*
⁶ *Id.*  In similar suits in other federal district courts, at least two other courts have preliminarily enjoined the order nationwide.  *See State v. Trump*, No. C25-0127-JCC, 2025 WL 415165, at *7 (W.D. Wash. Feb. 6, 2025)*; CASA, Inc. v. Trump*, No. CV DLB-25-201, 2025 WL 408636, at *17 (D. Md. Feb. 2, 2025)*.
⁷ *See* Decl. of Rev. Sandra Pontoh, Director of the New Hampshire Indonesian Community Support (doc. no. 24-2) at ¶¶ 8-10; Decl. of Juan Proaño, Chief Executive Officer of League of

plaintiffs' members' children born on or after that date risk deprivation of birthright citizenship under the Executive Order.[8] The parties jointly submitted a briefing and hearing schedule at the outset of the litigation and requested oral argument only, as opposed to an evidentiary hearing. Counsel for both parties confirmed at oral argument that their disputes in the litigation are legal rather than factual.

The plaintiffs allege that the Executive Order violates the Fourteenth Amendment and § 1401 of the INA because it "denies citizenship to children of noncitizens who are born in the United States and subject to the jurisdiction of the United States."[9] They also claim that the Executive Order violates the APA.[10]

The defendants disagree. They do not challenge the plaintiffs' standing to sue, but argue that they lack a cause of action.[11] They also argue that the plaintiffs are unlikely to succeed on the merits primarily because the phrase "subject to the jurisdiction of the United States" in the Fourteenth Amendment does not refer to the groups affected by the Executive Order, the plaintiffs have misinterpreted Supreme Court precedent regarding the phrase, and the defendants have offered a better interpretation of the phrase.[12] In addition, the defendants contend that illegal immigration to the United States justifies invoking the exception to birthright citizenship for "children born of alien enemies in

---

United Latin American Citizens (doc. no. 24-3) at ¶¶ 11-14; Decl. of Sienna Fontaine, General Counsel, Make the Road New York (doc. no. 24-4) at ¶¶ 10-20.
[8] *Id.* The court uses the term "deprivation" here in the sense that, currently and for many generations leading up to the issuance of the Executive Order, the United States government has conferred birthright citizenship on children born under the same circumstances.
[9] *See* Compl. (doc. no. 1) at ¶¶ 86-93.
[10] *Id.* at ¶¶ 94-97.
[11] *See* Defs.' Obj. to Mot. for Prelim. Inj. (doc. no. 58-1) at 15.
[12] *See generally id.*

hostile occupation."[13]  See *United States v. Wong Kim Ark*, 169 U.S. 649, 682 (1898).  The defendants finally assert that because § 1401 has the same scope as the same phrase in the Fourteenth Amendment, the plaintiffs' argument based on § 1401 should also fail.[14]  As to irreparable harm, the defendants argue that the plaintiffs' claimed harm would be hypothetical and speculative.[15]

**Analysis.**  The court grants the motion because the plaintiffs have satisfied the requirements for preliminary injunctive relief.

First, the plaintiffs have a cause of action to seek injunctive relief to redress certain governmental actions that contravene the Constitution or a federal statute.  *See, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952) ("decid[ing] whether the President was acting within his constitutional power when he issued an executive order directing the Secretary of Commerce to take possession of and operate most of the Nation's steel mills"); *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996) (adjudicating a "claim that [an] Executive Order is in conflict with the [National Labor Relations Act]").[16]  "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of

---

[13] *Id.* at 29.
[14] *Id.* at 36-37.
[15] *Id.* at 38-39.
[16] Again, the defendants do not challenge the plaintiffs' standing.  Much of the defendants' argument about § 1401 refers to challenging the statute under the APA.  Because the court does not assess the APA claims for the purpose of this motion, it does not address the defendants' arguments.

judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

1. **Likelihood of success on the merits**

The plaintiffs have demonstrated a likelihood of success on the merits of their constitutional claim and at least one statutory claim. The Fourteenth Amendment and § 1401 both state that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV, § 1; 8 U.S.C. § 1401. As the statute tracks the Fourteenth Amendment, the court views the claims as parallel, and the parties agreed as much at oral argument.

The court need not presume the Executive Order's constitutionality. "A legislative enactment carries with it a presumption of constitutionality." *Dutra v. Trs. of Bos. Univ.*, 96 F.4th 15, 20 (1st Cir. 2024) (citations and quotations omitted). The defense has not argued, or cited binding or persuasive authority, that executive orders enjoy a similar presumption, and the court does not know of any.

As to plaintiffs' constitutional claim, the Executive Order contradicts the text of the Fourteenth Amendment and the century-old untouched precedent that interprets it. The Supreme Court in *United States v. Wong Kim Ark* enumerated specific exceptions to the constitutional grant of birthright citizenship: "children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes." *Wong Kim*

*Ark,* 169 U.S. at 693.[17]  The categories of people affected by the Executive Order do not fit into those exceptions.

The Executive Order adds two other groups of people excluded from birthright citizenship, groups not listed in the Fourteenth Amendment or recognized in *Wong Kim Ark*.  As the defendants offer no First Circuit Court of Appeals or Supreme Court authority to support their reasoning, the plaintiffs have a high likelihood of success on the merits.  There is no reason to delve into the amendment's enactment history (or as explained below, § 1401's legislative history) or employ other tools of interpretation to discern that "subject to the jurisdiction thereof" refers to all babies born on U.S. soil, aside from the enumerated exceptions because the amendment and statute do so *unambiguously*.  Finally, the defendants have not established, and court does not find or rule, that the plaintiffs' members' children born on or after February 19 subject to this Executive Order are "enemies within and during a hostile occupation."  *Id.*

The Executive Order also likely violates § 1401, which codified the pertinent language from the Fourteenth Amendment.  A court "normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment" because "only the words on the page constitute the law adopted by Congress and approved by the President."  *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020).  Congress passed § 1401 fifty years after *Wong Kim Ark*.  *See* 8 U.S.C. § 1401 (original version at ch. 1, § 301, 66 Stat. 235 (1952)).  The court interprets the statute to incorporate the public meaning of

---

[17] A "person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe" is now a United States citizen at birth. 8 § U.S.C. 1401(b).

7

the reasoning and holding in *Wong Kim Ark*, which provided the public meaning of the same language in the Fourteenth Amendment.

> "Where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."

*Morissette v. United States*, 342 U.S. 246, 263 (1952). In other words, "[w]here Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it." *George v. McDonough*, 596 U.S. 740, 746 (2022) (cleaned up).

The plaintiffs advocate for the most natural reading of the phrase "subject to the jurisdiction thereof" employed by the Fourteenth Amendment and § 1401. "[I]t's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary ... meaning ... at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) (citations and quotations omitted). The amendment and statute are unambiguous, and the plaintiffs argue for the ordinary meaning of the phrase as understood by reasonable American English speakers at the time of enactment.

The defendants advance nonfrivolous arguments in support of a different meaning, primarily focusing on the concepts of "allegiance" and "domicile," the scope of the government's regulatory "jurisdiction," the status of Native Americans under the Fourteenth Amendment, and the precedent of *Elk v. Wilkins*, 112 U.S. 94 (1884), but in the face of an unambiguous constitutional amendment and unambiguous statute, they do

8

not persuade.[18]  "As our Court of Appeals has stated, 'genuine ambiguity requires more than a possible alternative construction.'" *United States v. Potter*, 610 F. Supp. 3d 402, 415 (D.N.H. 2022), *aff'd*, 78 F.4th 486 (1st Cir. 2023) (quoting *United States v. Jimenez*, 507 F.3d 13, 21 (1st Cir. 2007)).

Nothing in the text, precedent, history, or tradition of the Fourteenth Amendment or § 1401 persuasively suggests any other interpretation than the unambiguous ordinary meaning of "subject to the jurisdiction" of the United States advanced by the plaintiffs.

> "In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (internal citations and quotations omitted).  The plaintiffs have demonstrated a likelihood of success on the merits.

2. **Irreparable harm**

"'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after

---

[18]  The defendants also argue that courts should determine the Executive Order's constitutionality in individual, as-applied challenges, rather than the facial challenge here.  "A facial challenge to a legislative [a]ct is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which [an act] would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  The plaintiffs have demonstrated a likelihood of success, whether the Executive Order is analyzed on its face or as applied to the plaintiffs as alleged in their complaint.

9

a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005). The court has little difficulty concluding that the denial of citizenship status to newborns, even temporarily, constitutes irreparable harm. The denial of citizenship to the plaintiffs' members' children would render the children either undocumented noncitizens or stateless entirely.[19] Their families would have more trouble obtaining early-life benefits especially critical for newborns, such as healthcare and food assistance.[20] The children would risk deportation to countries they have never visited.[21] Although the defendants argue that the harm would be hypothetical and speculative, the court disagrees.

3. **Equities and public interest**

These final merged factors—*see Nken*, 556 U.S. at 435, *supra*—weigh in favor of granting the requested injunction. A preliminary injunction's "purpose 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Starbucks*, 602 U.S. at 346 (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, (1981)). A continuation of the status quo during the pendency of this litigation will only shortly prolong the longstanding practice and policy of the United States government, while imposition of the Executive Order would impact the plaintiffs and similarly

---

[19] *See* Pontoh Decl. (doc. no. 24-2) at ¶¶ 12-13; Proaño Decl. (doc. no. 24-3) at ¶¶ 14-15; Fontaine Decl. (doc. no. 24-4) at ¶ 27.
[20] *See* Pontoh Decl. (doc. no. 24-2) at ¶¶ 14-16; Proaño Decl. (doc. no. 24-3) at ¶¶ 17-19; Fontaine Decl. (doc. no. 24-4) at ¶¶ 24-26.
[21] *See* Pontoh Decl. (doc. no. 24-2) at ¶¶ 12; Proaño Decl. (doc. no. 24-3) at ¶ 15; Fontaine Decl. (doc. no. 24-4) at ¶ 28.

situated individuals and families in numerous ways, some of which—in the context of balancing equities and the public interest—are unnecessarily destabilizing and disruptive.

The defendants have "no interest in enforcing an unconstitutional law, [and] the public interest is harmed by the enforcement of laws repugnant to the United States Constitution." *Tirrell v. Edelblut*, No. 24-CV-251-LM-TSM, 2024 WL 3898544, at *6 (D.N.H. Aug. 22, 2024) (McCafferty, C.J.) (quotations omitted) (quoting *Siembra Finca Carmen, LLC v. Sec'y of Dep't of Agric. of P.R.*, 437 F. Supp. 3d 119, 137 (D.P.R. 2020)).

"When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Youngstown*, 343 U.S. at 637-38 (Jackson, J., concurring). The ultimate lawfulness of the Executive Order will surely be determined by the Supreme Court. This is as it should be. As the Executive Order appears to this court to violate both constitutional and statutory law, the defendants have no interest in executing it during the resolution of the litigation.

**Conclusion**. The motion is granted. The court enjoins the defendants from enforcing the Executive Order in any manner with respect to the plaintiffs, and with respect to any individual or entity in any other matter or instance within the jurisdiction of this court, during the pendency of this litigation.

**SO ORDERED.**

/s/ Joseph N. Laplante
Joseph N. Laplante
United States District Judge

Dated: February 11, 2025
cc: Counsel of Record